UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FIREMAN'S FUND INSURANCE COMPANY, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NUMBER  06-2806**<br>**REF: ALL CASES** |
| **COMMUNITY COFFEE COMPANY, L.L.C.** | * | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court are the following motions in this consolidated matter: Fireman's Fund Insurance Company and The Northern Assurance Company of America's (collectively "Insurers") Motion for Partial Summary Judgment Regarding Claim for Damage to Green Coffee Stored in Port Cargo Warehouse Numbers 4 A-B and 9 (Rec. Doc. 82); Community Coffee Company, L.L.C.'s ("Community Coffee") Motion for Partial Summary Judgment Regarding Insurers' Liability for Destruction Costs, Storage Costs and Scientific Testing Fees (Rec. Doc. 81); and Community Coffee's Motion for Partial Summary Judgment Regarding Insurers' Liability for Payment of Interest (Rec. Doc. 109).  For the following reasons, all three motions are DENIED.

**I.     BACKGROUND**

This case involves an insurance dispute between Community Coffee and its insurers. Community Coffee seeks recovery for damages to green coffee inventories stored in various

1

New Orleans warehouses that were allegedly damaged during Hurricane Katrina.[1] Coffee that was not otherwise destroyed by flood waters allegedly became contaminated due to high humidity, heat, and moisture in the warehouses in the days following the storm.

Community Coffee is insured under Ocean Marine Insurance Policy No. OC-95808301, effective December 1, 2003, and issued by the Insurers. The policy provides ocean marine, domestic transit, and warehouse storage coverage for Community Coffee's green coffee inventories. Specifically, Section III of the policy addresses storage coverage and states that the policy insures green coffee "against all risks of physical loss or damage from any external cause." (Insurers' Compl. Ex. 1, p. 29, ¶ 6.) The policy further provides that any "damaged coffee [is] to be skimmed and sold as customary and the company to pay thereon the depreciation in value on the quantity skimmed off, together with the cost of skimming and rebagging and all other expenses incurred by cleaning the coffee without reference to percentage or insured value." (*Id.*, p. 29, ¶ 7.) Section I of the policy also provides that "[i]n case of any imminent or actual loss or misfortune, it shall be lawful and necessary for the Assured . . . to sue, labor, and travel for, in and about the defense, safeguard, and recovery of the goods insured, or any part thereof, without prejudice to this insurance." (*Id.*, p. 13, ¶ 28.) Lastly, the policy excludes claims for "loss of market or for loss, damage, deterioration, or expenses arising from delay, whether caused by a peril insured against or otherwise, or from inherent vice or nature of

---

[1] Green coffee is a raw agricultural product that is customarily subjected to several processing steps before it is available for human consumption, including roasting at extreme temperatures up to 450°F.

the good insured." (*Id.*, p. 21, ¶ 49.)[2]

On September 21, 2005, Community Coffee informed its Insurers of all green coffee inventories that may have been damaged as a result of Hurricane Katrina. On October 4, 2005, Community Coffee submitted a formal proof of claim for the total loss of its green coffee inventories stored in Dupuy Warehouse Nos. 1, 2, 10, 15, and 18 and Port Cargo Warehouse Nos. 4A-B and 9 (all located in New Orleans) and Olympia International, Inc. (which is located in Texas) for the total sum of $10,282,290.41. The original claimed damages broke down by warehouse as follows:

- Port Cargo 4A-B - $425,016.02
- Port Cargo 9 - $52,604.10
- Olympia International - $133,583.62
- Dupuy 1 - $2,253,479.59
- Dupuy 2 - $3,022,344.17
- Dupuy 10 - $1,058,783.02
- Dupuy 15 - $2,053,708.46
- Dupuy 18 - $1,282,771.43

Community Coffee subsequently withdrew several of the above claims and reduced others. For example, the claim for Olympia International was withdrawn in its entirety and the claim for the Port Cargo warehouses was reduced to $22,247.00.

---

[2] These last two clauses, the "sue and labor" clause and the "loss of market" exclusion, both appear in Section I of the policy (ocean marine coverage), and not in Section III (storage coverage). While it is not readily apparent that these clauses are applicable in this case, because Community Coffee seeks recovery under Section III of the policy, the Court will assume that they do apply for purposes of the instant motions.

Unable to work out their differences with respect to whether or not the coffee in these warehouses was a total loss, Community Coffee filed suit on May 17, 2006 in the Civil District Court for the Parish of Orleans, State of Louisiana alleging that its Insurers had failed to pay policy proceeds in bad faith.  On May 25, 2006, the Insurers filed a Declaratory Judgment action in this Court seeking a complete resolution of all claims.  The next day, the Insurers removed Community Coffee's state court action and, with the parties' consent, both actions have been consolidated in this Court.

Community Coffee contends that its green coffee inventories were valued at approximately $10 million prior to Hurricane Katrina.  All such inventories have now been either destroyed as unsalvageable or sold.[3]  To date, the Insurers have paid Community Coffee approximately $6 million in insurance proceeds.  Thus, the central issue in this litigation is whether Community Coffee is entitled to further payment from its Insurers for losses to its green coffee inventories.

## II.     PRESENT MOTIONS

Before the Court are three motions for partial summary judgment.  Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of fact exists

---

[3] On June 23, 2006, Community Coffee filed a motion to dispose of all of the coffee in the flooded warehouses or, alternatively, to require the Insurers to pay all future storage costs. The Court denied this motion and allowed the Insurers to explore the possibility of locating a buyer for the coffee.  After sampling and cupping of the coffee in the Dupuy Warehouses, approximately 41,000 bags of coffee were sold in August of 2006 for $3 million.

only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Summary judgment is also proper if the party opposing the motion fails to establish an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating a summary judgment motion, the Court must view the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

The parties agree that Louisiana law applies in this case. Under Louisiana law, an insurance policy is an agreement between the parties and should be interpreted using ordinary contract principles. *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180, 1183. Therefore, when the words of the policy are clear, unambiguously express the intent of the parties, and lead to no absurd consequences, the contract must be enforced as written. *Cent. La. Elec. Co. v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 985 (La. 1991). If, however, the words of the policy are ambiguous, the ambiguous provision is to be construed against the drafter and in favor of the insured. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La. 1/14/94), 630 So. 2d 759, 763-64. Lastly, the insurer has the burden of showing that a loss falls within a policy exclusion. *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993).

### A.    Insurers Motion for Partial Summary Judgment Regarding Claim for Damage to Green Coffee Stored in Port Cargo Warehouse Numbers 4A-B and 9 (Rec. Doc. 82)

The Insurers have filed a motion for partial summary judgment, seeking dismissal of Count IV of the First Amended Complaint and Count IV of the First Amended Counterclaim which allege damage and/or loss to green coffee stored in Port Cargo Warehouse Nos. 4A-B and 9. In Count IV, Community Coffee makes the following allegation:

> Although the Port Cargo Warehouses did not suffer flooding or significant structural damage as a result of the hurricane, and scientific testing of green coffee in the Port Cargo Warehouses did not show elevated mold or bacteria levels among samples tested, when Community Coffee attempted to sell the green coffee from the Port Cargo Warehouses, offers from buyers to purchase the green coffee were discounted below the then existing market value of green coffee of comparable origin, grade and quality because of a general perception or concern among buyers regarding the condition of green coffees stored in the New Orleans area during Hurricane Katrina (the "Katrina Effect").

Community Coffee sold this coffee in January of 2006, but alleges a loss of $22,247 as a result of this "Katrina Effect." The Insurers argue that this type of damage is not covered under the policy, as "physical damage" is a prerequisite to coverage. Moreover, the Insurers argue that the coffee in the Port Cargo Warehouses suffered no physical damage, and thus Count IV must be dismissed. Community Coffee contends that the "all risk" policy language is broad enough to encompass the alleged "Katrina Effect" losses to coffee stored in the Port Cargo Warehouses, and that physical damage is not a prerequisite to coverage. If, however, a showing of physical damage is necessary, Community Coffee contends that genuine issues of fact exist regarding whether or not the coffee in the Port Cargo Warehouses suffered such damage.

The policy in this case insures green coffee "against all risks of physical loss or damage from any external cause." (Insurers' Compl. Ex. 1, p. 29, ¶ 6.) As the United States Court of Appeals for the Fifth Circuit has noted, "[a] policy of insurance insuring against 'all risks' creates a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 & n.11 (citing *Dow Chem. Co. v. Royal Indem. Co.*, 635 F.2d 379, 386 (5th Cir. 1981)). Nevertheless, the insured

has the initial burden of proving "both the damage and the casual connection between the damage and the covered cause of loss." *S. Hotels Ltd. P'ship v. Lloyd's Underwriters at London Cos.*, No. 95-2739, 1997 WL 325972, at *6 (E.D. La. June 10, 1997).

Upon a review of the record as it currently exists, the Court finds that genuine issues of fact exist regarding whether the coffee in the Port Cargo Warehouses suffered any physical damage, and thus the Court need not reach the issue of whether the policy would provide coverage absent physical damage.[4]

As noted, in Count IV Community Coffee states that the Port Cargo Warehouses did not flood and that testing "did not show elevated mold or bacteria levels." Indeed, Community Coffee's corporate representative, Annette Vaccaro, testified during her deposition that she was "not aware of it being wet," nor "aware of it being flooded." (Vaccaro Dep. 115:8-23, Oct. 19, 2006.) However, Port Cargo Warehouse representative Ronald J. Brower testified that coffee in these warehouses was in fact exposed to prolonged moisture due to water on the floor. (Brower Dep. 96-104, Nov. 9, 2006.) Brower also testified that the New York Board of Trade froze the licenses of all New Orleans warehouses (including Port Cargo) given concerns about the moist and damp conditions that existed in these warehouses for more than a month after the storm.

---

[4] Community Coffee asks the Court to adopt the reasoning of *Customized Distribution Servs. v. Zurich Ins. Co.*, 862 A.2d 560 (N.J. Super. Ct. App. Div. 2004), and find that physical damage is not a prerequisite to coverage. In *Customized Distribution*, the court held that a "change in how the product was perceived . . . as a result of an undue passage of time . . . is the functional equivalent of damage of a material nature or an alteration in physical composition." *Id.* at 566. Accordingly, the court found that "for coverage to apply, it was not necessary that the product's material or chemical composition be altered." *Id.* at 565. In light of the factual disputes about whether the coffee stored in the Port Cargo Warehouses suffered physical damage, the Court will not speculate at this time as to the theoretical limits of coverage under the policy.

(Brower Dep. 78:19-79:25.)[5] While there may be some dispute as to extent of damage suffered by the various warehouses in the Port Cargo complex, the Court cannot conclude at this time that no genuine factual issues exist with respect to whether coffee stored in warehouse numbers 4A-B and 9 was physically damaged.

The nature of the insured product in this case, green coffee, contributes to the factual uncertainty. Whether or not the green coffee's "initial satisfactory state . . . was changed by some external event into an unsatisfactory state" will likely be debated by experts in this case. *Trinity Indus.*, 916 F.2d at 270-71. Unlike a car that has clearly been damaged in a collision, the insured property in this case is likely subject to much more subtle forces and conditions. The Court cannot determine this issue as a matter of law without further factual development.[6]

Lastly, the Court notes that Community Coffee's claim for diminution in value is not excluded under the policy. The policy excludes claims for "loss of market or for loss, damage, deterioration, or expenses arising from delay, whether caused by a peril insured against or otherwise, or from inherent vice or nature of the good insured." (Insurers' Compl. Ex. 1, p. 21, ¶ 49.) This "loss of market" exclusion is commonly associated with "indirect or consequential economic losses" caused by matters "external to any particular product" and does not exclude coverage for diminution in value of insured property that is damaged. *See, e.g., Boyd Motors, Inc. v. Employers Ins. of Wausau*, 880 F.2d 270, 273-74 (10th Cir. 1989) (collecting authorities).

---

[5] Brower also testified that some of the Port Cargo Warehouses did not have electricity and/or plumbing for several months following the storm. (Brower Dep. 85:24-87:7.)

[6] The Insurers argue that Community Coffee's failure to "recondition" the coffee in the Port Cargo Warehouses prior to selling it demonstrates that the coffee did not suffer physical damage. While this fact may be relevant, it does not eliminate the possibility that the coffee was physically damaged.

Accordingly, the Insurers' motion for partial summary judgment will be denied.

> **B. Community Coffee's Motion for Partial Summary Judgment Regarding Insurers' Liability for Destruction Costs, Storage Costs and Scientific Testing Fees (Rec. Doc. 81)**

Community Coffee has filed a motion for partial summary judgment, arguing that under the policy, the Insurers must indemnify it for (1) destruction costs of approximately $145,000; (2) storage costs of approximately $255,000; and (3) scientific testing costs of approximately $225,000. Community Coffee seeks a determination on liability only, leaving for another day the determination of the specific amount owed by the Insurers for these costs. The Insurers argue that they have already reimbursed Community Coffee for these costs.

The Court previously denied the Insurers' motion for summary judgment based on the "sue and labor" clause of this policy, finding that the "determination of what is reasonable is a fact-laden question" and "summary judgment is not appropriate for making such conclusions when several issues of fact are present." *See, e.g., St. Paul Fire & Marine Ins. Co. v. SSA Gulf Terminals, Inc.*, No. 01-3063, 2002 WL 31260153, at *5 (E.D. La. Oct. 8, 2002). Just as the Court could not determine as a matter of law whether or not Community Coffee breached its obligations under the sue and labor clause, the Court cannot summarily determine whether Community Coffee *reasonably* incurred the above expenses. Moreover, it is not clear from the record whether any of the approximately $6 million already paid to Community Coffee was for reimbursement of these expenses. Accordingly, Community Coffee's motion for partial summary judgment will be denied.

### C.  Community Coffee's Motion for Partial Summary Judgment Regarding Insurers' Liability for Payment of Interest (Rec. Doc. 109)

Community Coffee has filed a motion for partial summary judgment seeking a ruling that the Insurers are legally obligated to pay interest on all partial payments made to date on Community Coffee's claims. The policy provides that "[l]oss, if any, is to be paid within thirty (30) days of interest in the goods insured and loss thereto being established." (Insurers' Compl. Ex. 1, p. 22, ¶ 53.) Thus, Community Coffee argues that payments should have been made by November 3, 2005, thirty days after Community Coffee submitted its proof-of-claim form on October 4, 2005. Community Coffee argues that only two payments were made prior to November 3, 2005, and thus that it is entitled to interest on the remaining $5.3 million in partial payments that have been made.[7]

However, the Court finds that there are factual disputes with respect to when Community Coffee "established" its losses and cannot determine as a matter of law that Community Coffee's October 4, 2005 proof-of-claim triggered the thirty-day period. Moreover, the Court will not make a determination on pre-judgment interest at this stage of the litigation, as there has been no finding of liability. Accordingly, Community Coffee's motion will be denied as premature.

## III.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Insurers' Motion for Partial Summary Judgment Regarding Claim for Damage to Green Coffee Stored in Port Cargo Warehouse Numbers 4 A-B and 9 (Rec. Doc. 82), Community Coffee's Motion for Partial

---

[7] Although the policy provides that payment is due within thirty days of both interest in the goods and loss thereto being established, it does not discuss the consequences of late payment.

Summary Judgment Regarding Insurers' Liability for Destruction Costs, Storage Costs and Scientific Testing Fees (Rec. Doc. 81), and Community Coffee's Motion for Partial Summary Judgment Regarding Insurers' Liability for Payment of Interest (Rec. Doc. 109) are DENIED.

New Orleans, Louisiana, this  9th  day of   April  , 2007.

_____
UNITED STATES DISTRICT JUDGE